Your Honor, to please the Court, my name is Rex Berry, and I'm representing Circuit City Stores, Inc. in this case. There are two fundamental issues presented on this appeal, and I'd like to address them in this order if I may. The first is whether the DRA is an enforceable arbitration agreement. The second is whether Circuit City established enough evidence in the District Court of the existence of the agreement. And the answer to both questions is yes. This Court can enforce the DRA on the record before it, rather than remand the case back to the District Court for any findings. The record is full. All the legal issues are briefed. This is a de novo review. This Court has the authority, if it chooses, to enforce the agreement as it stands. A good first question might be why the Ninth Circuit cases of Circuit City v. Adams, Engel, or Mantor don't preclude enforcement of the DRA. And that's because the Ninth Circuit's en banc decision in EEOC v. Luce Ford changed the law on enforceability of mandatory arbitration agreements. Did it change the California law of unconscionability? As the Court knows, California's unconscionability law, the short answer is no. But California unconscionability law requires two elements, procedural and substantive unconscionability. Adams, Engel, and Mantor, those cases, all presume procedural unconscionability based solely on the existence of the mandatory nature of the agreement. In none of those cases, found, based on the mandatory nature of the agreement only. There were no allegations of fraud in the inducement. There were no allegations of hidden terms or surprise. The sole criteria found by those panels for procedural unconscionability was it was required as a condition of employment. After Luce Ford, the en banc Ninth Circuit said that's not enough for procedural unconscionability. The Ninth Circuit said, and I quote, We now join several other circuits in concluding, pursuant to Gilmer, that the right to jury trial presents no bar to compulsory arbitration. The Luce Ford panel was very clear in its definition. How does that work inconsistently with the notion of unconscionability and procedural unconscionability that previously operated? I don't hear it in that sentence that you just quoted. Well, here's how. Okay. With regard to, if you go through the Luce Ford decision, there is a definition in a footnote, I believe it's footnote four of Luce Ford, where they talk about what they mean by compulsory arbitration. What they mean and what they define it as is an arbitration agreement you have to agree to in order to get or keep a job. That's exactly what the DRA is. So that's what Luce Ford was dealing with. And can you point me to that footnote? I believe it's footnote four in Luce Ford. I may have the number wrong, but it's a definition within the footnote of Luce Ford. Okay. And what the court said, if you go back to the facts of Luce Ford, Mr. Lagashre was the legal secretary for the Luce Ford Law Firm. He began his employment with Luce Ford, managed to get himself in the door without signing a mandatory arbitration agreement. Now, I'm sorry to interrupt you. I'm looking at footnote four. It doesn't seem to be there. I may have misnumbered that. I may have the number wrong. Yeah. The reason I'm asking you this is that seems to be important to your argument, and I'd like to focus on the language. If you could find it, I would appreciate it. I do not have a copy of the Luce Ford case in front of me. I apologize to the court for that. Well, you may have a minute before you go through. See if I can find it. Absolutely. I do know, because I can see it right here in my eye, it's in a footnote. Okay. You'll find it. In which the court specifically talks about why it is using the term compulsory arbitration, and that it is the type of agreement that one must agree to in order to get or keep the job. What that means, and the court goes on to say near the end of the decision in regard to the retaliation argument raised in Luce Ford, that we don't see that there's a retaliation issue because if an employer can require this type of agreement, then the employer doesn't violate any law by terminating someone who won't agree to that provision. So the only conclusion you can draw from that, and if you then bring in the dissents written by Judge Preggerson and Judge Reinhart, they were very clear in their dissents that they were concerned that because after Luce Ford, they felt employers now had full authority to require compulsory arbitration agreements. Both Judge Preggerson and Judge Reinhart wrote at length about the problems they felt that was going to create for employees. So any suggestion that Luce Ford is a narrow decision, I think, is belied by those very dissenting opinions. Tying it back to the point that you raised, so what? What does that mean? What that means is if the mandatory nature of the agreement is not enough to create procedural unconscionability, as the Luce Ford case certainly suggests, and I think holds, then the decisions in Engel, Mantor, and Adams that the DRA was procedurally unconscionable, based solely on its mandatory nature, can't be reconciled with Luce Ford. If an employer can require these agreements, and there's no other indicia of procedural unconscionability, and there's none even alleged here. There's no allegations of, again, fraud in what they were induced to sign, told they were signing something else. I think this is a fair description of the procedural unconscionability argument, and you can contradict me if you disagree, and that is, number one, it's take it or leave it, and unequal bargaining power. That's right. And in Gilmer, the United States Supreme Court in Gilmer says unequal bargaining power is not a basis for refusing to enforce an arbitration agreement. I think that Luce Ford is a recognition by the Ninth Circuit of that concept of Gilmer, saying we're going to enforce mandatory arbitration agreements. We're going to let employers require this, because the employee always has the option of going to work somewhere else. There's no constitutional or statutory right, if you will, to work for Circuit City. If Mr. Siorda and Mr. Hathorn were- What was that case you were citing? Gilmer versus Interstate Johnson Lane, the U.S. Supreme Court case, 1991. It found that age claims, federal age claims, were subject to mandatory arbitration provisions. That agreement happened to be the NASD registration that required arbitration. You couldn't be a broker-dealer anywhere in the country without agreeing to that registration form. But this is an obvious point. Gilmer was not construing California law, was it? Gilmer was not construing California law, but even California law recognizes mandatory arbitration agreements. Armendariz talks about the circumstances under which- Well, you know, I think the word mandatory is slipping between two meanings. One is once signed, it's mandatory, and the other one is it's mandatory that you sign it. I'm using it in the latter context, because I think that's how the California courts have looked at this. I recognize clearly that in the Adams-Engel and Mantor cases, Judge Gregerson and other judges said you can't force people to agree to these. That's procedurally unconscionable. That's inconsistent, I submit, with California law. California law says you can do that, the 24-hour fitness case, out of the California Court of Appeals. Armendariz talks about mandatory arbitration, compulsory arbitration of FEHA claims. And if you're going to have these as an employer, here are the five criteria that you have to have. Now, with regard to those criteria, the Circuit City Agreement is enforceable. It provides for a neutral arbitrator. It is mutually binding on both Circuit City and the employee. It provides for significant discovery, albeit somewhat less than would be available in court. You have a written arbitration decision. The arbitrator applies the law of the jurisdiction in which the claim arises. The agreement that is before you meets all the criteria set forth in Armendariz. The decisions that Mr. Seordi and Mr. Hathorne have relied on are past decisions of the Ninth Circuit construing former versions of the dispute resolution agreement. And this is an issue that came up in the Al-Sateen case on which Judge B wrote the dissent. And that is Circuit City's ability to modify these rules. You know, I've got some difficulty just with the language of Rule 19, trying to figure out what version of the rules to apply. If you just turn to Rule 19. Your Honor, I have it in the excerpt of record on page. Probably 32. 32. Yeah. It says. Provided all claims arising before alteration or termination shall be subject to the arbitration in effect the time. The word before in that first sentence is giving me trouble. All claims arising before alteration or termination. What happens if the claim arises out of the termination itself? It still would be governed by the procedural rules in effect at the time the claim is brought. And why is that? Well, since 1998 when Circuit City changed this provision, Circuit City has taken the position that any arbitration that is brought is going to be governed by the procedural rules in effect at the time the claim is brought and the filing fee is paid. Very simple reason for that. That means that all arbitrations happening at one time are being governed by the same rules. But what I'm after here, this appears to give us two sets of rules. One set of rules for, or at least potentially two sets of rules. One set of rules for events before the termination. That is to say, that's governed by the rules at the time of filing. And the other set of rules governing termination, that's at the time of termination or the earlier. And that's not how I read it. I'm not sure that's material to what's in front of me, but I had trouble with that phrase. I understand. And that's not how I read it. I think one way to address it is to look at what the former rule was, and I believe that that's in the record as well. The rule used to say that we're going to apply the rules in effect at the time your claim arose. Well, the practical problem that created is you could have arbitrations happening at the same time where claims arose at a different time and you were applying different rules. Two different arbitrations.  That's not necessarily a problem, but I understand you might want to avoid that. Functionally, it did present problems. What the rules were designed to do was to make this an evolving document. Everyone knows and everyone knew that arbitration law was changing quickly, changing fast. It still is rapidly developing. What this is designed to do is, this works in conjunction with Rule 18 that says, as the law changes, if there's something about this agreement that's not going to be enforceable, a court can sever it or an arbitrator need not enforce it. The idea is, as the law develops, both Circuit City and the employee are going to have the advantages of changes in that law. Okay. Now, there's another point that I'm having a little trouble with, and that is under Rule 19 in its latest iteration, the one we're reading from here on ER 32, it says shall be subject to the rules in effect at the time the arbitration request form and accompanying filing fee, dah, dah, dah. What happens if there's never been a filing fee and so on? That is to say, never sought arbitration. That seems to me this clause doesn't kick in. What happens then? There's no arbitration up to that point. Well, I understand. Maybe my question's not clear. What happens if the disgruntled employee or former employee never files for arbitration and simply comes to court? Then we end up with exactly the situation we had here where they filed a lawsuit. We come to court to compel the arbitration under the FAA. The requirement that Mr. Seward and Mr. Hathorn agreed to was that if they had any employment-related legal dispute of any kind arising out of the application for employment, employment or termination of employment, they were going to arbitrate that. Okay. But I'm trying to find out, but if we're trying then to evaluate the rules to figure out whether or not the arbitration is unconscionable, do we then evaluate the rules that would be in effect if they were to file arbitration, if we were to hold that they're compelled to arbitrate? I understand the Court's trouble. And I think that is a legal fiction that we have to indulge in. That is, we would have to assume that at the time they filed their claim that they should have filed for arbitration instead of filing that claim. For purposes of our argument, we've had to argue, as we have, that they filed the claim in 2003, I believe, that the rules in effect were the most recent rules in 2003. Without confusing the issue, there's been a subsequent amendment to the rules in 2005 that takes away the filing fee. There is no more filing fee for an arbitration. Okay. So under this version of the rule and under the questions we've just gone back and forth on, maybe we look at the 2005, because that may be the time they file. Let me ask you another question, and then I'll leave this, because I'm not sure how central this is. I'm just, I'm working at it because it may or may not turn out to be important. Given that word before, that is to say anything arising before the termination, the rules that are applied are the rules that are in effect when the filing fee or whatever goes forward. As to the termination itself, that's when the claim arose. Is that correct? I now see your problem, and I think I can fix it. Okay. The language before alteration or termination modifies Circuit City's ability to alter or terminate the rules. Does not reflect, does not refer to the termination of the employee. What the rule says is Circuit City may alter or terminate the agreement and these rules and procedures on March 1st of any year upon giving 30 days written notice to associates. I'm slow. Now I got it. That all claims arise before the termination or alteration. I should have seen it before, and I now see it. Where I was going with this was that at the outset in Rule 1 and in the agreement itself, the broad definition of what's covered, it covers all claims arising out of the application, employment, or termination of employment. So the argument would be that that's wrong. I'm slow. I detained you unnecessarily with that question. As you understand the case, has any party to this appeal argued that the 2002 version of the agreement should be the one we look at? No. No party has argued that. And it would not be an appropriate argument for the following reasons. One of the issues we had in Al-Safin that I think Judge B pointed out very clearly in his dissent was that the parties agreed as of 1998 and after 1998 that if I apply for arbitration in the future, then I'm going to agree to use those rules that are in effect at that time. The issue that the court struggled with in Al-Safin that the majority struggled with was, well, can you apply changes that happen after someone leaves employment? And the court wrestled with the Ganglia Derry case out of Washington. The majority, I think, misinterpreted that case, and I think Judge B interpreted it correctly to say that was the agreement. The agreement was if there is a subsequent change in the rules, I'm going to be covered by it. All right, so what keeps an employer from doing something crazy, saying, okay, fine, no more damages or a five-minute statute of limitations? The limitations that exist, I could point the court back to, again, the 24-hour fitness case out of the California Court of Appeals. In 24-hour fitness, the employer had the right to modify the arbitration agreement without notice. Far more draconian than anything we have here. And the California Court of Appeals said that's okay because implied in every contract is a covenant of good faith and fair dealing. And so long as the modifications are going to be made in good faith, if you've agreed to accept future changes, we're going to hold you to that. If the employer does something that is clearly in bad faith, no court has the obligation to enforce that. You know, your time is running, so let me ask you one question before you sit down. I notice that neither side has cited the Ting case, in which an opinion written for the panel by Judge Tashima that we held, as you say, a three-judge panel of this Court held, that our arbitration agreement, providing that no class action will be available, makes it substantively unconscionable. You have such a provision in this contract. I would address that in the following way. First, this isn't a class action, so that issue doesn't arise here. Well, I understand that, but no, I'm not sure that answers the Ting case. That is to say it makes it unconscionable. I understand. Second, that issue is an open question under California law. Right now it's in front of the California Supreme Court on the Discover Bank cases. Correct. There are two Discover Bank cases going exactly the opposite way. And the one that I think is right and that I hope will carry the day is the one that says that would be an arbitration-specific rule that the FAA would preempt. You can't simply carve out of arbitration agreements certain claims. Okay. So, in other words, you've noticed this issue, even though neither side seems to have briefed us? Absolutely. And I think that the problem that that raises is even if it were held that that clause happened to be unenforceable, there's a severability provision in the agreement. You sever that out. It doesn't matter for this case anyway because it's not a class action. Okay. So you have a minute left. I'd like to reserve that time. All right. Thank you. Good morning, Your Honors. Kenneth Yoon for Plaintiffs' Appellees, Ricardo Sordia and DeJuan Hawthorne. I would like to reserve 10 minutes of my time for my counsel, Peter Hart. Okay. We'll try to help you, but you keep track of your own time, too, please. Yeah. Yes, Your Honors. We believe that Judge Fees in district court made the correct decision when this was first brought to him, relying on EGLE, which has been followed by, I'm sorry, Mantor, Circuit City v. Mantor, improperly ruling that Circuit City arbitration agreements applicable are procedurally and substantively unconscionable and unenforceable. And EGLE and Mantor both decided in 2003, still precedence of this Court, we believe that nothing since these cases should make a difference, has changed the law, on what to look at in determining whether to enforce this arbitration agreement. Specifically, the cases of the EEOC v. Luce Ford and Negrompa, neither of which affect the state of the law on procedural unconscionability or substantive unconscionability in enforcement of arbitration agreements. And according to Judge Fees' opinion, he looked at the Circuit City arbitration agreements for 1997 and 2000, and find that those operative agreements were unconscionable, unenforceable under California law. Going through the analysis required, looking at the arbitration agreement itself, determining that it was a contract of adhesion based upon the prior authority of EGLE and Mantor, prior authority of EGLE, which has been followed with Mantor, that the contracts were procedurally unconscionable, and secondarily were substantively unconscionable based upon finding the same similar procedures, he called them materially indistinguishable from the same substantively unconscionable provisions in prior Circuit City cases of the United States. Kennedy Let me see if I understand, if I've been following you correctly. You're not disputing counsel's position that loose forward changes the rule or allows a change in California rule under Armendariz as to procedural unconscionability on the basis of compulsory acceptance of arbitration as a condition of employment. You're arguing that this contract is substantively unconscious, unconscionable. Or do I have you right? Martinez Well, all I'm doing is believing that Judge Fies made the correct decision in discerning that it was unconscionable under California law, which includes Kennedy Both procedurally and substantively. Martinez Both procedurally and substantively unconscionable, and that the EEOC decision, EEOC versus loose forward, does not apply to our situation in that, in that case, first of all, the word unconscionable is not discussed. It's simply not within the case. The case is a case about whether or not you can waive a jury trial by going to arbitration for certain types of federal claims. This case is a case based on state law here because of diversity jurisdiction. This case is simply, to look loose forward, loose forward would say that this case, under the Federal Arbitration Act, is, you can compel arbitration, but that doesn't necessarily mean that arbitration should, you can have a compulsive arbitration agreement, but that doesn't mean that the arbitration agreement will be enforceable under state law. Loose forward is simply a Federal decision. The law of California, Armendariz, is still the law of California and requires that a contract, any contract, and arbitration agreements on the same footing as any other contract must be, must be enforceable, including must be, not be unconscionable. On the issue of Armendariz and how it applies to the contract that we have here, what is your position as to the factors which Armendariz considers in determining whether procedurally a contract requiring compulsive arbitration is unconscionable? Well, we simply believe that, following the Court's opinions of Engel and Mantor, that this arbitration agreement, which the 97 and 2000 arbitration agreements found to be the operative ones by Judge Fees, are the, basically contain numerous of the same clauses found unconscionable in prior Ninth Circuit opinions, including Adams, Engel, and Mantor. And specifically, we can go through those if you would like, which would be, earlier mentioned, it was the no class actions, under State law as well, of the case. But this isn't class action, so what do we care about that? Well, containing illegal provisions, regardless of whether or not it's necessarily before the Court here, the contract contains illegal provisions. You wouldn't have standing to raise that, though, would you? I mean, it doesn't affect you. Well, we did not raise it. Let's go to the next one. This could have been a class action, except, well, that's okay. Yes, let's go to the next one. Also, we have a one-year statute of limitations. In this, even under the 2003, which we believe is not the operative agreement, but even under 2003, there's a one-year statute of limitations. That is substantively unconscionable. I see you're arguing the factors of substantive unconscionability. I'm presuming, based upon the fact that it is a contract of adhesion, and though it's not been addressed by Judge Fease because he found substantive ‑‑ I'm sorry, procedurally unconscionability based on the adhesive, take-it-or-leave-it nature of this contract, he didn't reach the second part, which we argue is that paragraph 19 is also substantively unconscionable because of surprise. But based upon those two elements, the contract is procedurally unconscionable, thus leading me to the substantive unconscionability, which is, as I mentioned, the statute of limitations, the no class actions, the ‑‑ under the case of ‑‑ oh, well, under prior opinions, the bilateral nature of the most recent arbitration agreement and the unilateral nature of the arbitration agreements that are operative in our case, 97 and 2000, either or, those are substantively ‑‑ I'm sorry, substantively unconscionable because essentially those are ‑‑ well, they're substantively unconscionable based upon prior precedent in the Ninth Circuit. Now, could you address which of the rules you think are applicable and why? Circuit City wants the 2003 rules. Which rules do you want and why do you think those are the governing rules? If the record includes the following arbitration agreements, the 1997, the 1998, the 2000, and the 2003, absent are 99, 2001, and 2002, and we feel Judge Fease, looking at the evidence before him and being the controller of his own courtroom, chose the agreements of 97 and 2000 as the operative agreements, seeing as there were no other agreements he could have reasonably chosen to be the operative ones. 2003, according to its own rules, well, I'm sorry, the better way to look at this is if you look at the 97 agreements and you look at the 2000 agreements, there are rules for changing the agreement from that point forward, requiring notice, notice either to the person, notice posted at the stores. And varying along these four years of agreements is the time when that notice is given. It usually is either March or December of each year. There's a certain particular time when it can be modified, and the notice needs to be given 30 days in advance. In our situation, these plaintiffs were terminated in 2002. The claim was brought subsequent to that. There's no agreement. We don't have the rules. Presumably, presuming that the 97 agreement is operative, originally operative, when he signed it, and the 2000 agreement is operative, if you follow the notice procedures, there is no opportunity to figure out what the rules are for giving notice to change the rules because we have gaps in the record. Judge Fees, looking at this, we presume chose 97 and 2000, being as those are the ones that are in front of his courtroom that he can say are the operative agreements. Why isn't it 2003, as your opponent argues? Looking at 2003, it requires that notice be given in March. In March 2003, the case had already been filed. So the agreement, by its own terms, requires notice be given prior. It's, as a factual matter, difficult to see how the 2003 would be operative, given that its own procedures require notice prior to the filing of the complaint. Okay. Would you agree with your opponent in response to my question that no party in this case, as far as you know, is arguing that the 2002 agreement is the controlling agreement? We can't argue. Yes, that is correct, Your Honor. All right. Thank you. We believe Judge Fees has that correct as 97 and 2000. So your contention is 97 and 2000. Their contention is 2003. Those are our choices. That is our position. Okay. And you wanted to save about half the time? Yes. Let me let Mr. Hart continue. Okay. Good morning, Your Honors. Peter Hart for Plaintiffs Appellees Riccardo Siordia and DuJuan Hatton. Your Honor, if I may begin by making a brief statement myself. We do believe that loose forward did not change California law on procedural unconscionability and on substantive unconscionability. We strongly disagree with Circuit City's contention that loose forward allows, from this point on, the blanket ability to present any sort of arbitration agreement prior to employment, and that because of that, there is now no longer procedural unconscionability. We would strongly disagree for that for a number of reasons, including several policy reasons that I can subsequently raise. But primarily we disagree with it because that was not the issue before loose forward. The issue before loose forward was not whether the agreement presented by loose forward to their employee prior to employment was an enforceable agreement. That was not the issue before the court, and that was not the issue that was decided upon in loose forward. They did not challenge that. They certainly would have had the right, we believe, under loose forward to have challenged it, so would any subsequent employee who is subject to a pre-employment arbitration agreement. Loose forward stands for the proposition that, yes, you can present a pre-employment arbitration agreement, but it still has to be a valid, enforceable pre-employment arbitration agreement. To determine whether that's correct, we look to California law, which is fairly well established by the U.S. Supreme Court. California law is set forth most clearly in Armendariz. Armendariz still holds that procedural unconscionability is an issue, and it determines various issues, for example, unequal bargaining power, contracts of adhesion, issues of surprise. Those still exist under California law, which the federal courts must look to in determining whether an arbitration contract is enforceable. That would be a major emphasis of us. We do believe that Circuit City's arbitration agreements presented to Suwardia and Hadhorn were procedurally unconscionable for several reasons. First of all, they were contracts of adhesion. They were take-it-or-leave-it agreements. Circuit City has essentially argued that you cannot work for Circuit City unless you agree to this agreement. In fact, the record shows that Dewan Hadhorn, one of the appellees in this instance, did not sign, or they have not been able to produce a signed agreement. But they are still contending that, irregardless of that, whether he decided with the manager not to work without the arbitration agreement, which would be a free discourse among an employee and employer, meaning that would be an ability to negotiate, they're saying you can't do that. You're bound by it no matter what. So thus, it is adhesive. There is unequal bargaining power, which Judge Feese properly addressed, and Judge Feese properly addressed the adhesion argument. Those are two still valid arguments under Armendariz, irrespective of Luce Forward. Further, we raised in our opposition, our appellate brief, that the issue of surprise is a major issue, too, which is still, again, one of the elements in Armendariz in California's law and unconscionability procedure. And how does the surprise argument work? The surprise argument is basically this. Paragraph 19 is essentially a paragraph that could either be viewed as either written in an extremely small type, something that's so convoluted. First of all, it's tucked into Paragraph 19 right at the end. The court itself, and Circuit City itself, is having a hard time figuring out what's the operative agreement, let alone an individual like Ricardo Sorrio or Dewan Hathaway. Another way of looking at it is it's in a foreign language. Nobody knows what it means. Nobody can clearly understand what it means. Those are surprising terms, no different than if you were presented a lease agreement with a tiny provision that made it so convoluted as to what the actual terms of a lease is, whether the lease rent is X amount or whether you get a two-bedroom apartment or not. It's such a complicated provision. It is surprise. It is written in English. So just to make sure I understand, your argument of surprise, then, is small print at the end, difficult to understand? Exactly. Okay. Essentially invisible, since we don't know what it means. Further, Negrompa, which was recently, Negrompa v. Mailku, Incorporated, which was recently decided by the 9th Circuit, in footnote 4, specifically says, cites to Circuit City stores v. Adams, one of the cases plaintiffs rely on, plaintiffs of Pele's rely on, stating that, holding that an employer's dispute resolution was a contract of adhesion, they're citing favorably to the proposition that you can still have contracts of adhesion, procedural unconscionability. This is clearly a year or more after... Yes, although as I read that footnote, the work it was trying to perform was not to hold specifically that something was or was not a contract of adhesion, but was rather trying to distinguish between unconscionability questions that could be decided by a court and unconscionability questions that had to be decided by an arbitrator. I don't think they were trying to tell us anything about the law of unconscionability. You're right, Your Honor. That is dicta, but it is cited favorably in the... I'm not even sure if dicta is simply a parenthetical description of what that case held. That is well taken, Your Honor. Okay. We also would like, I also would like to clarify, we at the trial court level, before Judge Pease did argue in our opposition to the motion to compel arbitration, that the 2002 agreement might be operative. Circuit City never produced a 2001, never produced a 2002, despite our repeated requests to produce them. They chose an agreement which, in their light, was probably the most favorable for them, but Dewan Hathorne and Riccardo Sordia were terminated in 2002. We brought this lawsuit in January or February of 2003, before there was a chance to modify the 2003, the 2002, and turn it into the 2003. Yet, so thus, Judge Pease, which is what my co-counsel said, he essentially, as the trier of fact, looked at the agreements, looked at what was not produced, and concluded that since the 2003 doesn't have any relevance, even though he went through an analysis of even why that is substantively and procedurally unconscionable, addressed all the substantive elements, he concluded that the operative agreements are 1997 and 2000, in part because Circuit City refused to produce the 2000 and 2001. We are happy to supplement the record if that is required, or if that is allowed by this court. Also, to address the issue of the class actions, we did not cite the Ting v. AT&T, but I have cited it in other cases. It is not a mood issue in our minds, because it is alive because of this. If this is remand, we would be precluded from filing, for example, a motion for leave to amend, to turn this into a class action, which we certainly would have considered doing, and have talked about doing, but moreover, it is still a live issue because of our right to modify this, either at any proceeding. We would have the right to file a motion for leave to amend, to turn this into a class action. We already have a representative action under California Business and Professional Code 17200, which arguably, through discovery, which is what our initial idea was through discovery, to find out how similar the claims were. We do believe that the underlying facts of working off the clock, etc., happened at other stores and was a customary practice. In fact, Circuit City has been insulated for essentially the last decade in class actions, because they said you can't bring class actions. So, you know. Well, they've said they can't bring them in arbitration. And so if that is their contention, we can go out and file a class action, I suppose, in court. But our current clients would not have that ability because of statute of limitations except through this appeal which is told. So we do believe it's a live issue. Okay. Okay. Thank you very much for the 25 seconds. Thank you. Thank you. Roboto. The footnote is footnote five out of loose board. And what it says is that. Hang on a second. Hang on a second. I'll get there. I'm a little slow. And I don't have a page number because I was going off the citation of my brief before the official report came out. It was on page five. Page five of the Westlaw opinion. It's footnote five. It defines compulsory arbitration and it says these are agreements which, quote, individuals must sign, ellipse, in order to obtain employment with or continue work for the employer. So I think that addresses the issue of whether it's a mandatory in the sense of having to arbitrate once you agree or mandatory in the sense of a condition precedent to being able to be employed. Okay. Hang on just a minute, please. I found the footnote but I'm trying to find where in the text it's footnoting from. Okay. Thank you. Very briefly because my time is running short. Sure. The district court did not analyze in any regard the 2003 rules. It relied on earlier versions of the rules. I would submit that it would have come to a different decision had it looked at the 2003 rules. Well, why are the 2000 rules relevant here if those 2000 rules come into effect only after the operative events giving rise to the lawsuit and, indeed, after the lawsuit's already been filed? What possible argument can you have for those rules being conscionable when those rules post-date both the operative events and the filing of the lawsuit? Because the agreement, and I do want to clarify one point. There was a question. Circuit City says it's the 2003 rules. Circuit City says it's the most current rules in effect at the time the arbitration is demanded. For example, if Mr. Seward and Mr. Haffern waited until 2006 or 2007 or 2008 to demand arbitration, then, and pay their filing, well, there's no filing fee anymore, but to demand arbitration some years down the road, it would be the most current rules in effect at that time. That is the agreement, and that's why it's appropriate to apply the 2002, 2003, 2005 rules. But the 2002 are not in the record. Is it true that you refused to provide them? We did not refuse to provide anything. Did you fail to provide them? Excuse me? Did you fail to provide them? We did not fail to provide them. Were they provided? They were not provided because we put forth the applicable rules in our petition. Were you asked to provide them? I see. You were not asked. What there was, we put forth the rules that we said applied. They came back on opposition, said, well, you know, we think other rules apply. There was not any discovery that was conducted. There was no letter to us saying you're not giving us the right rules. Mr. Hart points out that they brought action in January 2003. The 2002 rules could not be changed into the 2003 rules until March 1st, 2003. Your interpretation of paragraph 19 is that filing a civil law action and avoiding and trying to avoid arbitration is not a demand for arbitration. And it is not until the trial court orders arbitration that the timing of the rules is implicated. It's actually one step further. The trial court can order arbitration. A plaintiff may decide, I'm done. I'm not going to arbitrate. So the issue never arises. What implicates the time is when the plaintiff actually submits that arbitration demand and says, okay, the trial court has ordered me to arbitrate. Now I'm going to submit my demand. And if it's here, the trial court doesn't order him to arbitrate and we reverse the trial court and he's ordered to arbitrate, then it won't be the 2003 rules. It'll be 2005 rules. It's going to be the most if that if it happens in 2005, you're absolutely right. If they wait until 2006, 7, 8, that's a problem of their own making it. So what we get to is the ironic situation of Mr. Siordia and Mr. Hafner arguing for an unfavorable set of rules. You should apply rules that are unfavorable to us because we think that under these old precedents, maybe we won't be required to arbitrate. For those of us who sat in Al-Sharif and that sentence right here. Exactly, it does. The fact of the matter is that this court compels arbitration. You can bet Mr. Siordia and Mr. Hafner are going to request the most current set of rules because those are the ones that are most favorable to them. The last point, if I may, Your Honor, on this issue of California law and procedural unconscionability. California law requires two elements for procedural unconscionability. I think this sounds like familiar territory. All right. Then the last point I would make. I thought that was the last point. Indeed, that was, Your Honor. Okay. Thank you very much. Thank both sides for a helpful argument. The case of Siordia v. Circuit City Stores is now submitted for decision. We skipped over the case of Shervanian v. Gonzalez because the attorney for the government was not present. Is that attorney now present in the courtroom? Yes, Your Honor. Why don't we hear that case at this time?
judges: T.G. Nelson, W. Fletcher, Bea